**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 04-cv-01903-REB-MJW

LINDA A. TIMMERMAN,

      Plaintiff,

v.

U.S BANK, N.A.,

      Defendant.

_____

**ORDER GRANTING IN PART U.S. BANK'S MOTION FOR SUMMARY JUDGMENT**
_____

**Blackburn, J.**

      The matter before me is defendants' **U.S. Bank's Motion for Summary Judgment and Brief in Support** [#83], filed November 30, 2005.  I grant the motion with respect to plaintiff's federal claims and decline to exercise supplemental jurisdiction over the her state law claims as well as defendant's state law counterclaims.

## I.  JURISDICTION

      I have jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction).

## II.  STANDARD OF REVIEW

      Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586,

106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Farthing v. City of Shawnee*, 39 F.3d

1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome

of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505,

2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of

a genuine fact issue.  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d

1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995).  By contrast, a

movant who bears the burden of proof must submit evidence to establish every

essential element of its claim or affirmative defense.  *See In re Ribozyme*

*Pharmaceuticals, Inc. Securities Litigation*, 209 F.Supp.2d 1106, 1111 (D. Colo.

2002).  In either case, once the motion has been properly supported, the burden shifts

to the nonmovant to show, by tendering depositions, affidavits, and other competent

evidence, that summary judgment is not proper.  *Concrete Works*, 36 F.3d at 1518.  All

the evidence must be viewed in the light most favorable to the party opposing the

motion.  *Simms v. Oklahoma ex rel Department of Mental Health and Substance*

*Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999).

However, conclusory statements and testimony based merely on conjecture or

subjective belief are not competent summary judgment evidence.  *Rice v. United*

*States*, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 120 S.Ct. 334 (1999); *Nutting v.*

*RAM Southwest, Inc.*, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

### III.  ANALYSIS

Plaintiff was previously employed by defendant as a Branch Manager in its

Loveland, Colorado, branch bank.  In April, 2003, plaintiff's supervisor, District Manager

Trish Johnson, confronted plaintiff about 31 separate instances over a two-month

period in which plaintiff reversed overdraft fees totaling $1,099 for two of her

employees.  This practice is prohibited specifically, as outlined in defendant's *Employee

Handbook*:

> The nature of many jobs at U.S. Bancorp requires
> employees to process customer account transactions such
> as cashing checks, waiving service fees, approving credit,
> etc.  Employees are not allowed to process or approve
> transactions related to their own personal accounts, the
> accounts of family members or personal acquaintances or to
> accounts on which they may have a personal interest or on
> which they are an authorized signer.  Specifically, this
> includes, but is not limited to refunding, reversing or waiving
> fees; approving or increasing credit lines; cashing checks;
> etc. . . .
>
> Violation of this policy may be grounds for disciplinary
> actions, including termination.

(Def. Motion App., Exh. E at 0171.)  The policy is reiterated in defendant's *Code of

Ethics and Business Conduct*, as well as its *Manager's Guide to the U.S. Bank Code of

Ethics and Business Conduct.*  (*Id*., Exh. F at 0226 & Exh. G at 0349.)  In addition, a

December, 2001, memo to all employees from Steve Lovas, President of the Central

Mountain Region, of which plaintiff's branch was a part, clarified that while "there may

be times when employees have legitimate requests to have fees refunded or waived[,]

. . . in order to avoid conflicts or misunderstandings, all such requests much go through

a District Manager, Market President, or myself." (*Id*., Exh. H at 0147.)   Based on the

number of transactions and the amount of money involved, Johnson terminated

plaintiff's employment on April 30, 2003.  At the time of her termination, plaintiff was 52

3

years old.

This lawsuit ensued.  In her original complaint, plaintiff asserted causes of action for sex and age discrimination under Title VII and the Age Discrimination In Employment Act ("ADEA"), respectively, and for promissory estoppel.  During the course of discovery, defendant learned that plaintiff had maintained an internal "party fund" account comprising various types of bank service fees that should have been credited to the bank's general ledger account.  Following her termination, plaintiff withdrew $480 from the account and deposited it into a separate account in her name at another bank.[1]  Defendant therefore sought and was granted leave to assert counterclaims against plaintiff for civil theft, conversion/assumpsit, unjust enrichment, civil conspiracy, aiding and abetting a breach of fiduciary duty, and fraudulent misrepresentation.  Plaintiff, in turn, sought and was granted leave to amend her complaint to add claims for retaliation under Title VII and the ADEA, abuse of process, and violation of 42 U.S.C. § 1985(2), all premised on defendant's filing of the counterclaims.  Defendant now seeks summary judgment as to all plaintiff's claims, as well as with respect to its own claim of civil theft.

With respect to plaintiff's sex and age discrimination claims, defendant asserts that plaintiff cannot show that its legitimate, non-discriminatory reason for terminating her employment – the violation of defendant's policy regarding reversal of account fees for other employees – was pretextual.  *See Garrett v. Hewlett-Packard Co.*, 305 F.3d

---

[1]  Plaintiff contends that she refunded most of the money to the bank's mortgage loan officer to repay him for photocopies he never made, and intended to use the remainder to throw a party for employees.  However, she was too distraught regarding her termination to host the party.  After defendant filed its counterclaims, plaintiff returned the remaining money to it.

1210, 1216 (10th Cir. 2002) (describing burden-shifting analysis employed in determining claims based on circumstantial evidence under Title VII and the ADEA).  In response, plaintiff points to three factors she claims demonstrate pretext: (1) that Johnson replaced every female branch manager in her division with a younger man; (2) that defendant terminated plaintiff's employment without first applying its policy of progressive discipline; and (3) that plaintiff was disciplined more harshly than other employees who committed similar infractions of the policy.  I find that plaintiff has failed to present a genuine issue of material fact regarding pretext under any of these theories.

Plaintiff relies heavily on the fact that all six of the Branch Managers whom Johnson hired after the bank reorganized in 2001, including plaintiff's own replacement, are younger men, from which she infers that Johnson, her immediate supervisor and the person that made the decision to terminate her, had a "pattern and practice" of replacing older women with younger men.  Although it is something of a misnomer to use the term "pattern or practice" in the context of an individual discrimination case,[2] a

---

[2]  "Pattern and practice" is a term of art in employment discrimination litigation and is used to describe a particular type of claim asserted primarily in class actions initiated by the EEOC.  *See Herendeen v. Michigan State Police*, 39 F.Supp.2d 899, 904-05 (W.D. Mich. 1999); *Forehand v. Florida State Hospital at Chattachoochee*, 839 F.Supp. 807, 812-13 (N.D. Fla. 1993), *aff'd in relevant part, vacated on other grounds*, 89 F.3d 1562 (11th Cir. 1996).  Such cases follow a different paradigm of proof than individual discrimination cases:

> The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest.  The inquiry regarding an individual's claim is the reason for a particular employment decision, while at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking.

*Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 876, 104 S.Ct. 2794, 2799-800, 81 L.Ed.2d 718 (1984).  Consequently, courts have refused to allow individual plaintiffs to prove individual

plaintiff may proffer pattern or practice type evidence to show, as plaintiff attempts to do here, that the employer's articulated reason for its action was a pretext for discrimination.  ***See Lowery v. Circuit City Stores, Inc.***, 158 F.3d 742, 761 (4th Cir. 1998), ***vacated and remanded on other grounds***, 119 S.Ct. 2388 (1999); ***Herendeen v. Michigan State Police***, 39 F.Supp.2d 899, 906 (W.D. Mich. 1999).  Nevertheless, however, plaintiff's evidence cannot bear the weight she places on it.  There is a logical disconnect between the evidence plaintiff proffers, which focuses on Johnson's hiring and/or promotion decisions, and the ultimate issue in this case, which concerns plaintiff's termination for violation of a work rule.  "A plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals."  ***Doan v. Seagate Technology, Inc***., 82 F.3d 974, 979 (10th Cir. 1996), ***cert. denied***, 117 S.Ct. 684 (1997) (citations and internal quotation marks omitted).  Plaintiff and the various persons who were eligible, considered, and ultimately hired for the position she formerly held are not comparably situated for purposes of her claims in this lawsuit.  This evidence therefore does not create a genuine issue of material fact for trial.[3]

Plaintiff's argument that pretext is shown by defendant's failure to follow a policy of progressive discipline fares no better.  Although unexplained "disturbing procedural

---

discrimination by employing the pattern and practice framework.  ***See Murphy v. PriceWaterhouseCoopers, LLP***, 357 F.Supp.2d 230, 246-47 (D.D.C. 2004); ***Herendeen***, 39 F.Supp.2d at 905 (citing cases).

   [3]  One of the affidavits plaintiff proffers in support of this argument is the subject of a pending motion to strike.  (*See* U.S. Bank's Motion to Disqualify Timmerman's Counsel and to Strike Improperly Obtained Evidence [#109], filed January 23, 2006.)  To the extent plaintiff relies on this affidavit, my conclusion that the evidence is irrelevant to prove pretext moots the motion to strike.

irregularities" may give rise to an inference of pretext, *see Mohammed v. Callaway*, 698 F.2d 395, 399 (10th Cir. 1983), there is no evidence that defendant had established a mandatory progressive discipline policy with respect to the reversal of overdraft fees.[4] Instead, the evidence clearly shows that while defendant believed in progressive discipline "when appropriate," it specifically reserved the right to forgo progressive discipline when it determined that termination was warranted.  (Plf. Resp. App., Exh. 29 at 0183.)  Indeed, plaintiff acknowledges that Johnson's decision regarding how to discipline her for the admitted infractions of defendant's fee reversal policy was completely discretionary.  (Plf. Resp. at 12.)  This evidence therefore does not create a genuine issue of material fact as to pretext either.  *See Hansen v. Alta Ski Lifts Co.*, 1998 WL 161147 at *4 (10th Cir. Mar. 31, 1998).

Finally, plaintiff argues that she was treated more harshly than other employees who committed infractions of comparable seriousness.[5]  A plaintiff may raise a genuine issue of fact regarding pretext by showing that similarly situated employees outside her

---

[4]  The progressive discipline policy to which plaintiff points relates to losses on the opening of new accounts.  (*See* Plf. Resp. App., Exh. 26.)  Plaintiff makes no effort to explain how this policy is relevant to her situation.  Indeed, plaintiff admits that "there is no bank policy that dictates termination based on the number of times or dollar amount of refunds given."  (Plf. Resp. at 12.)

[5]  Plaintiff argues also that she understood the policy to mean that as a manager, she was entitled to waive fees for subordinate employees.  Although defendant's *Code of Ethics and Business Conduct* does contain some language that might be thus interpreted (*see* Def. Motion App., Exh. 7 at 0226), the December, 2001, memo from Lovas specifically informed employees that only a district manager or higher level employee could authorize such reversals (*id.*, Exh. 9).  The facts that plaintiff claims she did not get this memo and interpreted the policy differently than did defendant present no material issue with regard to pretext.  The focus of the inquiry is on whether defendant believed plaintiff had violated the policy, not on whether plaintiff believed she had done so.  *See Robleado v. Deffenbaugh Industries, Inc.*, 136 F.Supp.2d 1179, 1192 (D. Kan. 2001) (so long as employer in good faith believed employee violated work rule, fact that employee did not in fact violate rule is immaterial), *aff'd*, 33 Fed.Appx. 480 (10th Cir. Apr. 24, 2002); *Holston v. The Sports Authority, Inc.*, 136 F.Supp.2d 1319, 1332 (N.D. Ga. 2000) (same), *aff'd*, 251 F.3d 164 (11th Cir. 2001).

protected class who violated the same or a similar work rule were treated more favorably.  *See Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000); *Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997).  "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu*, 112 F.3d at 1404 (citation and internal quotation marks omitted).  Thus, plaintiff's evidence regarding similar violations by employees who were not under Johnson's supervision is irrelevant to the issue to be decided.  *See Rivera v. City and County of Denver*, 365 F.3d 912, 922 (10th Cir. 2004); *Kendrick*, 220 F.3d at 1233.[6]

Of the employees who were under Johnson's supervision, plaintiff maintains that Kathy Ashland received only a Final Written Notice for reversing a co-worker's overdraft charges.  However, plaintiff specifically notes that Ashland, like plaintiff, was a woman over age 40.  Assuming *arguendo* that Johnson discriminated between plaintiff and Ashland, it cannot have been on the basis of sex or age.  Similarly, plaintiff's failure to establish the age of another employee whom Johnson supervised, identified only as Heather, who refunded fees to her own account but was simply told not to do so again, makes it impossible to conclude that age bias infected that decision.  *See Schulte v. Potter*, 2005 WL 2789218 at *13 (N.D. Okla. Oct. 9, 2005).  This leaves only plaintiff's contention that Jeff Jiron, a man in his 30s, was not disciplined for reversing an employee's overdraft fees.  While this incident might be considered evidence of pretext,

---

[6] Plaintiff presents no argument or evidence suggesting that there exists a "specific enterprise-wide policy" that would justify considering the actions of other supervisors.  *Rivera*, 365 F.3d at 922.

8

there is no evidence that Johnson or anyone else in a position of authority over Jiron

knew of his actions such that the failure to discipline him for violating bank policy could

be seen as indicative of age- or sex-related bias.[7]

In short, plaintiff has presented no relevant evidence demonstrating that

defendant's asserted reason for terminating her employment was a pretext for

discrimination against her based on her age or sex.  It may well be true that defendant's

decision was intemperate and unfair and that it should have taken account of plaintiff's

long service to the bank, spotless disciplinary record, and logical justifications for the

sagacity of allowing managers such as herself to process fee reversals for employees

under their supervision.  Such considerations, however, are not within the purview of

Title VII or the ADEA.  Provided unlawful discrimination does not infect its

decisionmaking, an employer may fire an at-will employee for a good reason, a bad

reason, or no reason at all, and it is not the proper role of the federal courts to second-

guess such personnel decisions.  *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076,

1083 (10th Cir. 1999) ("Our role is to prevent unlawful hiring practices, not to act as a

'super personnel department' that second guesses employers' business judgments.")

(citation and internal quotation marks omitted); *see also Nix v. WLCY Radio/Rahall

Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("Title VII is not a shield

against harsh treatment in the workplace.").  Accordingly, defendant is entitled to

summary judgment as to plaintiff's disparate treatment claims.

---

[7] Moreover, there is no evidence regarding the number or dollar amount of fee reversals involved in any of these comparator cases.  Plaintiff therefore has not shown that these incidents were of comparable seriousness to her own.  *See Kendrick*, 220 F.3d at 1233.

9

I find further that plaintiff has failed to state actionable claims for retaliation based on defendant's assertion of counterclaims against her in this litigation.  To state an actionable claim for retaliation, plaintiff must establish, *inter alia*, that she suffered an adverse employment action.  ***O'Neal v. Ferguson Construction Co.***, 237 F.3d 1248, 1252 (10th Cir. 2001).  Post-termination conduct can constitute an adverse employment action, ***Hernandez v. Data Systems International, Inc.***, 266 F.Supp.2d 1285, 1306 (D. Kan. 2003), and in particular, the filing of a retaliatory lawsuit may be thus construed, ***see Berry v. Stevinson Chevrolet***, 74 F.3d 980, 986 (10th Cir. 1996); ***Hernandez***, 266 F.Supp.2d at 1306.  However, I perceive a crucial distinction in this regard between an employer *initiating* its own retaliatory lawsuit against the employee, ***see Berry***, 74 F.3d at 986; ***Hernandez***, 266 F.3d at 1306, on the one hand, and filing a counterclaim once it has been made a defendant by the employee.  One of the primary justifications for permitting retaliation claims based on the filing of a lawsuit against the employee is the potential chilling effect that action may have on the employee's pursuit of her discrimination claim.  ***See Hernandez***, 266 F.Supp.2d at 1306 (citing ***Ward v. Wal-Mart Stores, Inc.***, 140 F.Supp.2d 1220, 1231 (D.N.M. 2001)).  The same concern is not implicated when the employee has already instituted litigation.  ***See Equal Employment Opportunity Commission v. K&J Management, Inc.***, 2000 WL 34248366 at *4 (N.D. Ill. June 8, 2000).  The federal courts have their own measures to deal with bad faith or retaliatory counterclaims.  ***See Earl v. Electro-Coatings of Iowa, Inc.***, 2002 WL 32172298 at *2 (N.D. Iowa Oct. 29, 2002); ***Glass v. IDS Financial Services, Inc.***, 778 F.Supp. 1029, 1061 (D. Miinn. 1991).

Moreover, I find that plaintiff cannot establish a genuine issue of material fact with respect to the causation element of her retaliation claims.  ***Berry***, 74 F.3d at 985. Defendant instituted its counterclaims only after it was revealed in discovery that plaintiff had taken money that ostensibly belonged to defendant.  It is clear that its decision to do so was based on that information, not on plaintiff's protected activity of instituting this lawsuit.  ***Cf. Blistein v. St. John's College***, 860 F.Supp. 256, 268 (D. Md. 1994) (retaliation claim found viable based on employer's filing of counterclaim alleging that employee's act of filing of suit constituted a breach of contract), ***aff'd***, 74 F.3d 1459 (4th Cir. 1996) .  For these reasons, defendant is entitled to summary judgment as to plaintiff's retaliation claims.

Plaintiff also asserts a cause of action under 42 U.S.C. § 1985(2), alleging that defendant conspired with its attorneys to file the counterclaims in an attempt to deter plaintiff from and retaliate against her for filing this lawsuit.  Plaintiff cites to no case to support the proposition that the mere filing of a counterclaim in a lawsuit initiated by the allegedly injured party is sufficient to give rise to a cause of action under section 1985(2).  Indeed, the only case I have found addressing the issue holds that, given the clear First Amendment rights implicated, the filing of a counterclaim cannot constitute the "force, intimidation, or threat" necessary to sustain a cause of action under section 1985(2).  ***Heffernan v. Hunter***, 1998 WL 150953 at *4-5 (E.D. Pa. March 26,1998), ***aff'd***, 189 F.3d 405 (3rd Cir. 1999).  I find this authority persuasive.  Again, other remedies exist, both within the federal court system and under state tort law, to redress the filing of allegedly baseless, retaliatory counterclaims.

11

This leaves only plaintiff's state law claims for abuse of process and promissory estoppel and defendant's state law counterclaims.  When all federal claims have been dismissed prior to trial, the court generally should decline to exercise supplemental jurisdiction over pendant state claims.  ***United States v. Botefuhr***, 309 F.3d 1263, 1273 (10th Cir. 2002).  I find it appropriate to do so here, and thus will dismiss these claims without prejudice.

## IV.  CONCLUSION

Plaintiff has brought forward no genuine issue of material fact with respect to any of her federal claims in this lawsuit.  Accordingly, defendant is entitled to summary judgment on those claims.  Plaintiff's remaining state law claims, as well as defendant's state law counterclaims, will be dismissed without prejudice.

**THEREFORE, IT IS ORDERED** as follows:

1.  That **U.S. Bank's Motion for Summary Judgment and Brief in Support** [#83], filed November 30, 2005, is **GRANTED IN PART**;

2.  That the motion is **GRANTED** with respect to the First, Second, Third, Fourth, and Sixth Claims for Relief of the First Amended Complaint [#63], filed August 12, 2005, and those claims are **DISMISSED WITH PREJUDICE**;

3.  That judgment **SHALL ENTER** on behalf of defendant, U.S. Bank, N.A., and against plaintiff, Linda A. Timmerman, on her claims for discrimination under Title VII and the ADEA, retaliation under Title VII and the ADEA, and violation of 42 U.S.C. § 1985(2), as set forth in the First, Second, Third, Fourth, and Sixth Claims for Relief as asserted in the First Amended Complaint [#63], filed August 12, 2005;

12

4.  That the motion is **DENIED** in all other respects;

5.  That the Fifth and Seventh Claims of the First Amended Complaint, [#63], filed August 12, 2005, asserting state law causes of action for abuse of process and promissory estoppel, respectively, are **DISMISSED WITHOUT PREJUDICE**;

6.  That the First, Second, Third, Fourth, Fifth, and Sixth Counterclaims of Defendant's Answer to Plaintiff's First Amended Complaint and Counterclaims [#70], filed August 26, 2005, asserting state law causes of action for civil theft, conversion/assumpsit, unjust enrichment, civil conspiracy, aiding or abetting breach of fiduciary duty, and fraudulent misrepresentation, respectively, are **DISMISSED WITHOUT PREJUDICE**;

7.  That the reference to the United States Magistrate Judge of **U.S. Bank's Motion to Disqualify Timmerman's Counsel and to Strike Improperly Obtained Evidence** [#109], filed January 23, 2006, is hereby **WITHDRAWN**, and that motion is **DENIED AS MOOT**;

8.  That **Plaintiff's Objection to Minute Order by Magistrate Judge Granting Defendant's "Motion to Strike Undisclosed Witness From Final Pretrial Order"** [#136], filed March 10, 2006, is **DENIED AS MOOT**; and

9.  That the Trial Preparation Conference currently scheduled for Friday, July 14, 2006, at 9:00 a.m., and the jury trial scheduled to commence on Monday, July 17, 2006, are **VACATED**.

Dated March 31, 2006, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**